I'm Christy Gibbons, and I represent the appellant in this matter, Elliott Duke, who pled guilty to receipt of child pornography and was sentenced to the statutory maximum of 20 years, as well as to a lifetime of supervised release, which included two absolute bans, one on his use of the Internet, and one on his any contact with minors. The appellant has raised five issues. One is foreclosed, two relate to the sentence that was imposed, and two relate to the supervised release conditions. Based on this court's recent cases concerning supervised release, I'd like to address those two issues first. As the court is aware, a district court has broad discretion to impose supervised release conditions, as long as those conditions are reasonably relate to 3553A factors and are not a greater deprivation of liberty than necessary to meet the 3553A2 factors. Here, the appellant acknowledges that using this type of analysis, there are conditions that should be imposed on him related to his Internet use and his contact with minors. This is because he was convicted of an Internet crime, which was receipt of child pornography, and that necessarily involved victims that were minors. He acknowledges and concedes that conditions need to be imposed in these two areas, but these conditions need to be tailored to the 3553A2 factors. In this case, it is, so what about the Internet and contact with minors needs to be imposed to particularly protect society and deter future criminal activity? Mr. Duke's access to the Internet that led to his criminal behavior involved sexually explicit material and emailing sexually explicit material. So that's the area that needs to be restricted. Mr. Duke should not have access to sexually explicit material. He shouldn't be emailing people about sexually explicit material. But instead, what happened in this case was an absolute lifetime ban. Frequently in these areas and in some areas, the trial court's effort is to, you know, sort of see beyond the present contours, and this isn't empirical, pure science by any notion in terms of conduct. So within the general sentencing rubric, we see judges who will not draw the line right at where the foot is, but attempt to draw the line slightly outward to cover the contours of what might reasonably, you know, occur without going too far. So I assume you'd accept that as a general proposition, right? Absolutely, Your Honor, and if that's what had happened in this case, the situation would be different. But instead, what happened was an absolute ban on any computer that has capability to access the Internet for the rest of his life. I have an argument that I agree with you in theory that it's too broad, because in the future, it's going to be very difficult to even have a phone that doesn't have Internet access, and it's going to be very difficult to watch television that doesn't have Internet access. It's maybe difficult to use your oven that doesn't have Internet access before this is all over. And so we're going to where everything is interconnected rather than you can segregate off devices. And it's a lifetime, and we don't know how long the gentleman will live with the technology, and there's no provision for revisiting it. How would we reconcile your wanting us to vacate this with our cases in Ellis and Miller? I assume that Miller, you would say, well, that was 25 years, and this is a lifetime, so therefore, we could ride around that, so to speak. But what would you do with Ellis? And we have to follow our precedent. Correct, Your Honor, but what is happening in these cases is the, at this time, with the technology that we know at this time, this is an illegal sentence. It is, it's an absolute ban. I don't disagree with you, but I'm asking you, what do you do with Ellis? Ellis is not an old case. We have to follow Ellis. We're bound. Are you saying that we have to follow Ellis, and then you want to go on bonk? What, what, how could we rule for you and follow our precedent as we are bound to do? Well, what I'm, I'm, I am asking and proposing that in this case, a lifetime ban with this particular defendant, and this particular conviction, with his criminal history, which is, he has no criminal history, not that he not have these types of conditions on him, but that they, that they are more tailored, that it's at least that he could get permission from his probation officer, which is what usually happens in these cases, or that it's tailored to the area of sexually explicit material or the contact with minors over the Internet. I understand that you wish to have that, but if we've already upheld these really broad restrictions in other cases, and you've already admitted correctly so that your client is in the main wheelhouse of people who would have Internet restrictions, he's not someone who has a different type of conviction, how do we say that this was wrong by the district court where we have precedent that says it's okay in a situation such as this? Well, in, in this case, though, on his, on Mr. Duke's facts, with, and, and this is when the mitigation and his characteristics as a defendant come into play also, he, he has no criminal history. He's never had contact with a minor. He is, he's a veteran of the U.S. Army. He had to become a U.S. citizen. There are facts that make this case different in, in that an absolute ban in, in this case, under these facts, without any reasons given by the judge, was inappropriate. And it goes also to his, his next condition concerning the contact with minors. Again, he's not asking to have contact with minors. He's asking to have an escape clause, essentially, some type of exception that he can have permission of his super, his probation officer or supervised contact with minors, and those conditions would be appropriate in. Okay, so that's a different thing. In your case, there, the court didn't go through the factors and analyze it, and you think that we should remand to have the court go through why this, this very stringent requirement is appropriate. That would be a, that would be something that you think that's different from the cases that I was citing to you earlier. Exactly, Your Honor, and we're not asking for reversal in, like, striking these conditions. We're asking to vacate these two conditions and remand with instructions to consider the 3553A factors, consider the mitigation that was presented, engage in a discussion about what was the driving force for this judge to impose these absolute bans so that a fashioned supervised release condition for the rest of his natural life can be come, come to terms with the district judge and the defendant present for that conversation. How old is the defendant? He's currently 28 years old, and he's been sentenced to 20 years and a lifetime of supervised release, and another, and this is jumping ahead to the reasonableness of the sentence, but a collateral effect of this conviction for this, this man was that he was discharged from the Army based on this. He was Article 15 with, and he was, so he was discharged other than honorable, which means that because he joined, he became a U.S. citizen as, due to his military service, because he was ultimately discharged with other than honorable, he's, he is going to, he can lose his U.S. citizenship as well. So he, that takes him outside of the realm of most defendants also. He's, he is potentially a man with no country because he's renounced his citizenship to the U.K. and he won't be able to be a citizen to the U.S. also. And, and, and we, the appellant urges the court to consider this in determining whether the district judge was, gave an unreasonable sentence by just sentencing this man to the statutory max without giving any reasons in a sentencing hearing with the defendant present for that absolute statutory max. Admittedly, Mr. Duke's child pornography collection had disturbing videos and images. It, it is disturbing. Most child pornography cases are. And putting him side by side with other defendants, he's not the worst. He's not the person who deserves the 20-year sentence. You, you acknowledge that the term, you know, a lifetime ban does occur in circumstances. The guidelines speak to lifetime terms of supervised release, etc., etc. So the term, you know, a lifetime condition isn't sort of race, no, it's not sui generis, it's there. Is your main objection not the term of lifetime, but if lifetime, that, that it's a conditional, that, that there are these conditions? Or are you objecting to the lifetime as well? No, Your Honor, and, and appellant did not object at the sentencing and we are not objecting to lifetime supervision. So it's the conditions. It's absolutely the conditions and, and the two conditions that were imposed that can be tailored. I hear you. We, we understand what you say, what's wrong with it, but as Judge Elrod has asked you, you know, it's not enough for us to say, well, this is bad. Send him back down, do it over. I mean, I don't personally have difficulty figuring out how the district court got to where she got in terms of that. Now, whether that's correct or not is a different deal, but looking at the conduct, what he pled guilty to, the scope, etc., etc., I mean, it's not difficult for me to, to, to figure it out. So the point is, just sending it back and do, do it over isn't necessarily the guidance to this judge or any other judge who has a bunch of these. So pinning you down more, you know, in terms of we've approved lifetime, but many of those have been with conditions. So what specifically are you saying, okay, he should, the, the judge has a more frequent contact with the P.O. to approve, that if he buys a computer, he's got to take it to the P.O. to approve it, etc. I mean, precisely what are you saying is, are the conditions that seem reasonable? Not that the judge is going to do it, but, you know, I don't necessarily want to send this back down. The district court said, I didn't see a problem when I did, here's a condition, and boom, you're back up here again saying, well, this isn't exactly the deal. So we're, well, we've got you here. Yes, Your Honor. Is he employed? He was, he was a member of the military. He was still on active duty until he was arrested, and then he was incarcerated. But, but what, what we're asking are specific conditions and giving guidance to the. I heard all that. The district judge. I heard all that. That's telling me something. I'm asking you what specific conditions. You can't just come here asking us to do something without having some sense of, what is the relief you want? Yeah, I know you want us to send it back, but it's helpful if we send, if we're going to send it back, we send it with some guidance. And so you've tried to say narrowly tailored to his circumstance. So I'm saying, if you had a wish list, I mean, what would that be? Is it that he has to go to the probation officer every week? He has to take his laptop for it? That he's got to take the PO to Radio Shack? Well, I guess they're going out of business to buy the computer. I'm not trying to be facetious or exhausted, but it's just not enough to say what the judge did is bad, send it back. If you're saying something tailored to a person, I don't know what that means. Because one way of fixing it is if you can't get on the internet, you can't do it. And I don't know what the district court does. So in a sentence or so, what? More frequent trips to the PO? What? That could be a possibility, but specifically it would be restricting his internet use from sexually explicit material and installing monitoring equipment to ensure he does not engage in any activity, either by email or accessing websites, that is the concern of online banking. He can still access the internet for things that the public safety is not at issue, whether Mr. Duke is emailing his family in the UK, that's not a public safety issue. Whereas if he's engaging in going on, even adult child pornography for this type of defendant in this case should be off limits. That's where the limiting and tailored condition would come in. It would be that specific kind of condition. Are you wanting to give all the power to the probation office to decide what he's allowed to do? Or is the probation, are you just asking the district court to lay out all of these monitoring devices and then the probation officer has to monitor it? Actually, I think it would probably be more efficient if the district court said these are the parameters. He cannot access sexually explicit material and he has to consent and install monitoring equipment on his computer and his computer has to be subject, which he already has this condition, to search by the probation officer. But so the district judge would say what the parameters were instead of Mr. Duke having to go to the probation office every time he needed to use the computer or whether there would be any blurred lines about what he could or couldn't do. It would be absolutely from the district judge. Thank you. We have your opening. You've saved some rebuttal time. Ms. Domingue? May it please the Court. I'm Camille Domingue. I represent the United States, who's the appellee in this matter. Beginning with the argument that counsel made on the conditions of supervised release. As counsel said, what we're really here to talk about is not whether any conditions of supervision restricting internet or contact with children are appropriate in light of the 3553A1 and A2 factors. They obviously are appropriate in this case. We're really talking about these particular conditions and whether they are overbroad, excessive, too broadly drawn in order to achieve the goals of 3553A2. And I would suggest that, as Judge Elrod, you pointed out, the Court has spoken a lot, particularly recently, but is going as far back as the Paul decision in 2001, about these conditions of supervised release. Now, Paul did affirm an absolute ban. I think what the defendant's really complaining about is the absolute nature of the ban. No internet use. No contact with children. That's the problem, that the way the condition is currently drawn, it's absolute. Judge Stewart and Paul, this Court approved an absolute ban, albeit on a three-year condition of supervised release. And I'm not going to stand here and tell you that that's not a distinction without a difference, because it is. Now, I will point out that that was the maximum at the time, but three years versus life, obviously, is a significant distinction. But the Paul Court specifically addressed whether an absolute ban is going to be per se unreasonable. And the Court said no. We declined. They distinguished a Tenth Circuit case, White, and White had criticized absolute bans. And this Court and Paul said, you know, we're not going to say it's per se unreasonable. We're going to look at the facts and circumstances of the offense. And what we have here is a defendant who was engaged in a lot of very troubling activity. Not just the receiving of the child pornography, but he was communicating actively with other people, other pedophiles, or other individuals who collected child pornography. He was emailing back and forth. The search warrant revealed conversations, I'm going to call them relationships, with other collectors of child pornography. The trading back and forth. And I won't quote the language, but it's in the PSR. He was very graphically asking for a certain, very graphic type of child pornography. And then perhaps I'm going to say most troubling. This defendant had cultivated a relationship with a 16-year-old, or someone who he believed was 16 years old, and was trading sexually explicit images with her. She had sent him sexually explicit images of herself. So we have three very troubling different types of activity. And I would suggest that's what the Paul Court was talking about when it said, you know, we're not going to declare a per se ban, or that it's per se unreasonable to have an absolute ban. We're going to look instead on the facts and circumstances of the case. And that's what the District Court did in this particular instance. The District Court didn't give any reasons in this case whatsoever. Not, Judge, I agree with you that there were no oral reasons given. But there were written reasons given. But the written reasons, if you give the written reasons after the fact, when the argument's not made, then they don't have a chance to respond. For example, one of the reasons was that because the person had fantasies. Fantasies, though, scientifically don't mean that you're more likely to be recidivist. So they could have responded with that. This is a very terrible thing. I'm not trying to minimize the terribleness of the child pornography. But they didn't have a chance to respond to the reasoning and to have a discussion. If all the reasons are just given at the end in writing, then they don't get to make the procedural and reasonableness objections. I'd have two responses to that. First, all the defendant has to do, if a sentence is imposed, whether he disagrees with the substantive portion of the sentence, the imprisonment, the length of the sentence, or the conditions of supervision, all he has to do is say, Judge, I don't understand. I mean, that's why he has counsel. Judge, I object that your reasons are not, it's not clear to me, Judge, why you're ruling. And that's why we have an extensive body of case law, most notably Mondragon-Santiago, which I believe Your Honor authored. That's why the plain error case law is as it is. But he did, they did object. But he objected to... He objected to the conditions specifically that we're here for. This is not a plain error situation. It's not plain error on the condition, but it's plain error on the sufficiency of the statement of reasons. So what the defendant objects to is, Judge, and if you read it, it's one line. I object to the condition on internet access and on contact with children. There's no request or no objection to the sufficiency of reasons. Counsel, the defendant concedes that and concedes that on the issue on sufficiency of reasons, we are here on plain error review. And I would suggest that a lack of sufficient reasons is one of the easiest things for the district court to fix with a contemporaneous objection. Because no district judge is going to, if counsel says, Your Honor, I don't understand the reasons, no district judge is going to say, sorry, I'm just not saying any more. I'm done. The district judge is always going to say, well, let me clarify. Does this ban include smart phones? Does this ban include smart phones? I don't know. Does this ban, so if you think about that, does this ban include interactive television? The language of the restriction says shall not have access to any computer capable of internet access. I think the case law of this circuit is that we're going to give a common sense interpretation to that term. I would suggest, Judge, if you have a phone that can connect to the internet, it's covered by this. I think that's probably going to be, you look at the whole point behind it. That's what our circuit's case law says. We don't want Mr. Duke accessing the internet because that's how he can get more child pornography, that's how he can communicate with more pedophiles, that's how he can find more 15 and 16 year olds to send him naked pictures. So I would suggest to you that if I were a probation officer, which I'm not, that that's probably within the scope of the ban. Now, if there's a problem with that, and I make this point in my brief, and this court, in at least two unpublished decisions, Lyons and Hilliker, of the two cases I cite in my brief, recognizes that 3583, I think it's E2, and Federal Rule of Criminal Procedure 32.1, I think it's C, says that the defendant always has recourse to the district court. This defendant is going to be in jail for 20 years. Who knows what the technology will be like in 20 years? And Judge Elrod, as you know, in 20 years, it may be that we have, you know, that they're now, we have these Google glasses, where the computer is in your glasses. Who knows what the technology's going to be in 20 years? Twenty years ago, my guess is that district courts were prohibiting defendants from possessing VCRs. That would be a useless restriction today. And I think this is Judge Stewart's point, that we impose a condition today that is restrictive because we're trying, we can't predict 20 years down the road, or probably closer to 18, 17 and a half, when Mr. Duke gets out of jail, what the technology's going to be like. And that's why Lyons and Hilliker recognize that the defendant always has recourse to go back to the district court to move that a condition of supervision be modified. And if the district court denies it, he can take another appeal. We can be right back here, probably won't be me, somebody else 20 years from now, arguing about whether the modified conditions of supervised release are still too onerous. And that's because this is, you know, this is just a difficult area. Technology changes so fast. And I would suggest that that, that this Court's case law has recognized that that's what, that that's what we do. I mean, you make a well-reasoned argument, as you typically do, on, on those points. But are you acknowledging our cases which do approve these long terms, but they are conditional? They have conditions. I mean, generally speaking, you know, you can look at some SORNA cases, and some are child porn. I mean, I was on the Fernandez panel, and we reversed that and sent it back as SORNA, but it's these deals with these absolute bans without any conditions. I mean, that's still within the heartland of the problem, is, is the unconditional nature. So, you heard the questions we asked, counsel opposite. Assuming that the panel deemed that this is pretty broad, you know, pretty stretched out, there are no reasons, whatever, whatever. Notwithstanding your argument about, you know, it's plain error on sufficiency, but just in looking at it in the homeland, counsel opposite suggested conditions vis-a-vis, you know, the PO, etc., etc. What's your response to all that? I mean, is that an administrative impossibility, you know, conditions where the PO's got to, you know, look at all these devices? What is the guidance to the district court? Because I'm pretty sure they're welcome some. I think that district courts tread a very fine line here, because this court is aware of a large number of decisions where the district courts have been reversed for giving too much discretion to probation officers. And there is a fine line there, and if you cross that line, then the district court improperly delegates too much Article III authority to a probation officer. So I would say, being sympathetic to district judges, that's a problem. And I think that is why, I'm guessing, but that's why district judges tend to err on the side of a more restrictive condition that gives less discretion to the probation officer. Again, sort of recognizing that if it's just not workable, the defendant can always go back to the district court, to the Article III court, and say, Judge, this is just not workable. I can't do anything without the Internet, because my oven operates according to the Internet, as Judge Elrod points out. I think that's the problem that district courts have. Now, that said, I've worked on a lot of these cases. I've seen a lot of conditions of supervision, and many of them do say, no Internet access without the permission of the probation officer. Some of them do require monitoring. These particular conditions don't have a monitoring requirement. And I will tell you, the circuit's case law has kind of gone both ways on monitoring. There's an unpublished decision, McGee, I can provide the court with a citation in a 28J letter, that said monitoring, filtering software is fine. I think Fernandez had a problem with monitoring software. Ms. Gibbons and I had a case that was decided a few weeks ago. It was, the opinion was initially sealed because it involved a juvenile. It's since been unsealed last week, where the court tried to reconcile McGee and Fernandez, and upheld monitoring, because, you know, without monitoring, how can you check a ban on Internet access? So monitoring's an option. I'll point out that in Miller, there was a conditional ban, no Internet, without the permission of the probation officer, and the defendant argued on appeal, instead of the ban, why don't you just use monitoring? And this court in Miller said that the district court doesn't have to go through all these possible alternatives and say, no, that one's not workable, no, this one's not good, no, that one's not good. If the district court can justify it, which the court found it was justified in Miller, then the district court doesn't have to exclude a whole bunch of other possibilities and options. But I would, you know, in response to your question, permission of a probation officer is one we see often. This court has affirmed those, monitoring software, filtering software. I think without monitoring software, it's very, very hard to monitor these things. I think that defendants don't like searches. That's the other thing to do, is the defendant has to allow a search of his computer. That's probably more intrusive. Defendants complain many times about searches. I think that's part of the conditions here, that the defendant has to agree to allow his computer to be searched. I think that's... He's not complaining about that condition. Correct. Correct. I understand. It was really in response to Judge Stewart's question, what can we do short of an absolute ban? I think you can allow permission, monitoring, filtering, and searches. If we all agree that his Internet access has to be limited, I think that's probably, you know, pretty much all you can do. And in the sealed juvenile case, I'll provide the court with a citation in a 28-J letter, this court actually modified a condition. In that particular case, there was a ban on Internet subject to permission from a probation officer. Judge Benavidez had a concern about, what does that mean? Permission every time, Monday, Tuesday, Wednesday. That's three different permissions. How much permission? And this court said, if you can't apply it this way, you need to apply it that way. So I think this court always retains the discretion to interpret an existing condition in a way that it believes is not overbroad. That was certainly done in Paul. Remember, Paul involved the restriction on, quote, indirect contact. The argument was, gosh, I can't get on a bus. I can't go to church. I can't go to the grocery store. And the court in Paul said that the condition in a way that's not going to be overburdensome. And ever since then, you know, all the case law has recognized on the basis of Paul that contacts with minors will not be read, a prohibition on contacts with minors will not be read in a way that would prohibit incidental contact, like going to the grocery store, going to the movies, riding a bus. Briefly on the, and I think I touched on this earlier, so I'll just spend a couple minutes on it, but on the sufficiency of the reasons, counsel touched on that towards the end of her argument. We are here on plain error review on sufficiency of the reasons. Mondragon-Santiago is the leading case. The defendant has to show that there would be an effect, that the outcome of the sentence would be changed. And, you know, the things the district court relied on based on the written reasons. We, as Judge Stewart points out, you can look at the written reasons. We can review this on an appellate level, the court can review it on an appellate level, because the written reasons make it reasonably clear. The court was concerned about the history of the defendant, his characteristics, the facts and circumstances of the offense, some specific facts of the offense, the very, very graphic nature of any of the videos, his confession to having these fantasies about raping toddlers, and the communications with the actual 16-year-old in Alabama, all of that's in the written reasons. So I don't think as we stand here there's really a question as to what informed the district court's sentencing decision. All of those facts were set forth in the PSR. Did we know it's a 16-year-old in Alabama? I thought we didn't know that. I thought it was a purported 16-year-old. I think what the PSR says that she represented, or it could have been an undercover officer. It could be one of those groups that trolls for pedophiles. It could be, Your Honor. What makes me think that it probably was a real 16-year-old was that she sent an actual image of a girl that was a sexually explicit image. And I think in most undercover operations they try to avoid that. Again, that's not in the record. That's just based on my personal experience. So there were actually sexually explicit images of underage girls sent. Did we be troubled by the fact that the district court didn't seem to look at how the restriction would affect the other aspects of the defendant's life, such as banking, communication with the family? If you read the transcript, it's the district court believed that she was doing a favor because she was going to do the best she could to protect him from having access to the thing that was ruining his life. And it's done in a, you know, it's like a noble gesture in that. But it doesn't deal with can he do banking, can he do this. It doesn't ever consider any of those other restrictions. I think that that was addressed to some extent by this court in Miller. In Miller there was an argument that a certain condition would create, would impose too much of a burden on the defendant's ability to work or to do something like that. And this court said, well, you know, he really didn't specify in what, sort of like the burden is on the defendant to say, judge, you know, if you do that computer ban, I can't do my job at the bank. What the PSR reflects about this particular defendant's employment history is I think he worked at a Domino's pizza, he worked at Wal-Mart, he worked at another kind of a restaurant. At the time of the prosecution he was active duty military. The PSR reflects he was pending a dishonorable discharge because of this conduct. So we, I think we have a defendant with sort of a spotty employment, and I don't mean that in a bad way. I just mean nothing in the PSR would jump out at the district court that, oh my gosh, this guy is a computer programmer, he's an engineer, he's a, you know, a teacher who's going to need internet access. Almost all of those jobs, even the ones that you mentioned at restaurants and stores, they're on the computers now. So even the retail or whatever is on a computer that has access. It's not, the world has changed already. And I absolutely agree, Judge, and I think that's, that brings me back to my argument that this defendant is not going to be getting a job of any kind for almost twenty years. And when we know what his needs are in terms of accessing the computer, and we know what technology is in twenty years, he has recourse to the district court saying I've got this job at such and such a place, I have to access the computer because of inventory, and that's his recourse. He goes back to the district court, and at that time, he can get a modification. And if the district court denies it, we can be right back here. Thank you. Thank you. Ms. Gibbons, you have a rebuttal? Thank you, Your Honor. First, I'd like to address the fact that how this case is different from my research in every other case that was addressed by counsel and by the court. In Ellis and in Miller, there were not absolute bans. There was a clause that the defendant could go to his probation officer and ask for permission to use the Internet or to have access to a minor. Here, there is no such clause. It's an absolute ban. And my research when counsel for the government says he could always go back later to the district court at some point and say, hey, can we change this, that is not the proper mechanism. The legality of this particular condition or both of these conditions, the legality of that sentence is before this court now. It's on appeal. It's been preserved. And whether or not it's an abuse of discretion to impose this condition now needs to be ruled on now. It cannot wait until he's no longer represented on supervised release, he doesn't have counsel, and he has to wait a year before he can go back under 3583E. That is not the proper way to handle these types of absolute lifetime bans. Also, with regard to the statement of review, that's conflating two different things. One is the plain error review of Mr. Elliott not objecting to how the judge articulated her sentence at sentencing. The other is a completely different issue of whether it's proper for a district judge outside of the presence of counsel or the defendant in violation of his due process and his Sixth Amendment rights in her chambers to issue a statement of reasons that differs from her oral reasons. It added information. That's a difference. And the precedent of this court is when there's a difference, we go with what was orally given because that's where the counsel and the defendant were to be able to object to have this particular conversation we're having now with the district court. And the purpose of the objections by counsel for the defendant regarding the supervised release conditions and the reasonableness of the sentence was to engage the court with this. But instead, that's not what happened. There were no reasons given. We don't know exactly what the reasons were until this statement of reasons comes out. If we send the case back, and I'm not saying we will, but if we sent the case back and directed, strongly suggested, urged, nudged the district court to impose filtering and monitoring, would you be objecting? No, Your Honor. That would be a reasonable condition for this type of case with this defendant. What does your research show the circuit lineup is for circuits that don't allow these absolute bans versus ones that do? Well, I believe that was... The third and the tenth don't allow, I think? Well, actually, the third and the sixth do not allow. In Heckman, the Third Circuit said that an Internet ban for life was too broad. In the Sixth Circuit, in Inman, said that a lifetime ban was too restrictive, and that was on plain error. Who does allow it? I haven't found... Actually, this court doesn't either allow an absolute ban. All the other courts, including Ellis and Miller, were not absolute. They had an exception for the defendant to be able to go to his probation officer. We don't have that here. He can't even have that option. Does any circuit explicitly allow an absolute ban? Not that I'm aware of, but I don't want to represent that for certain. Thank you, Your Honor. All right. Thank you, Ms. Givens. Thank you, Mr. Lane, for the briefing and argument in the case. It will be submitted.